UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jennifer Lee Mullin, et al.,<br><br>          Plaintiffs<br><br>v.<br><br>Longs Drug Stores California, L.L.C., et al.,<br><br>          Defendant | Case No. 2:24-cv-02187-CDS-NJK<br><br>**Order Granting Defendants' Motion to Compel Arbitration and Denying Defendants' Motion to Stay as Moot**<br><br>[ECF Nos. 10, 11] |

      Plaintiffs Jennifer Lee Mullin and Charles Joseph Thompson bring this class action lawsuit against defendants Longs Drug Stores California L.L.C. and Nevada CVS Pharmacy, L.L.C., alleging claims of (1) failure to pay overtime in violation of Nev. Rev. Stat. § 608.018; (2) failure to pay wages for each hour worked in violation of Nev. Rev. Stat. § 608.016; (3) failure to timely pay all wages due at termination in violation of Nev. Rev. Stat. §§ 608.020, 608.018, 608.040, and 608.050; and (4) failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 207. *See generally* Compl., ECF No. 1-1. Pending before the court are defendants' motion to compel arbitration (ECF No. 10) and motion to stay case pending the resolution of the motion to compel arbitration (ECF No. 11). The motions are fully briefed. *See* Opp'n ECF No. 20; Replies, ECF Nos. 29, 30. For the following reasons, I grant the motion to compel arbitration and deny as moot the motion to stay.

**I.      Legal standard**

      "There is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (1996)). "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute

in favor of arbitration." *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 118–19 (Nev. 2015)).

"Where the Federal Arbitration Agreement (FAA), 9 U.S.C. § 1-16, governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it." *Royz*, 517 P.3d at 907. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (stating that the party seeking to compel arbitration has the burden to show both elements) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If the answer to both inquiries is yes, then the court must enforce the arbitration agreement's terms. *Id.* Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

## II. Discussion

The arbitration agreement at issue is two pages long and is titled "CVS Health Arbitration Agreement." Mullin agreement, Defs.' Ex. A, ECF No. 10-1 at 2–3.[1] The terms of the agreement are spelled out in nine provisions. *Id.* The agreement to arbitrate covers

> any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. **Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in paragraph 6, below, regarding the Class Action Waiver.**

*Id.* at 2 (emphasis added). As mentioned, the agreement includes a "class action waiver" which states in part: "You and CVS agree to bring any Covered Claims in arbitration <u>on an individual basis only</u>; You and CVS waive any right or authority for any Covered Claims to be brought, heard or arbitrated as a class, collective, representative or private attorney general action." *Id.* at 3 (underline in original). Importantly, the class action waiver states: "Notwithstanding any other provision of this Agreement or the AAA Rules, disputes regarding the validity, enforceability or breach of the Class Action Waiver will be resolved only by a civil court of competent jurisdiction and <u>not</u> by an arbitrator. *Id.* (same). The agreement also includes a

---

[1] Defendants also provided a copy of the Thompson Arbitration agreement. *See* Thompson agreement, Defs.' Ex. B, ECF No. 10-2. Because the agreements are identical, and for ease of reference, when discussing the agreement I only cite to the Mullin agreement.

3

section titled "Your Right to Opt Out of Arbitration" which states:

> Arbitration is not a mandatory condition of Your employment at CVS. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to CVS Health, P.O. Box 969, Woonsocket, RI 02895. <u>In order to be effective, Your opt out notice must be postmarked no later than **30 days** after the date you agree to the Agreement below.</u>

*Id.* at 3 (emphasis in original). Additionally, at the bottom of the second page, in bold under the heading "Statement of Assent and Understanding" it says that

> [b]y signing below, You acknowledge that You have carefully read this Agreement, that you understand and agree to its terms, that You have had the chance to ask questions about the Agreement, and that you have had or will have the chance to consult with your own legal counsel before the end of the opt out period described above. You enter into the Agreement voluntarily and not in reliance on any promises or representations made by CVS other than those in the Agreement itself. <u>You understand that by agreeing to this Agreement and not opting out, You and CVS are giving up the right to go to court to resolve Covered Claims and giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others on Covered Claims</u>.

*Id.* (underline in original). The document also includes a place for the signees printed name, their signature, and the date. *Id.* Defendants provided copies of the arbitration agreements signed by Mullins and Thompson, respectively. *See* Mullin agreement, Defs.' Ex. A, ECF No. 10-1; Thompson agreement, Defs.' Ex. B, ECF No. 10-2. Both of the agreements include each plaintiff's printed name, signature, and the date on which they were signed. *See* ECF No. 10-1 at 3; ECF No. 10-2 at 3.

As explained above, when the FAA governs an agreement, the court's role is limited to determining (1) whether a valid agreement to arbitrate exists and (2) if so, whether the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. Under the "governing law" section of the Agreement, it says it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." ECF No. 10-1 at 3. Additionally, the parties agree that the agreement encompasses the

dispute at issue. Therefore, the only question before the court is whether a valid agreement to arbitrate exists.

### A. A valid arbitration agreement exists.

Defendants argue, as evidenced by the signed arbitration agreements, that (1) plaintiffs' claims must be arbitrated, and (2) that Mullin and Thompson must be compelled to attend individual arbitration. *See* ECF No. 10 at 10–11. In opposition, the plaintiffs argue that an agreement to arbitrate was never reached because both Mullin and Thompson deny signing the arbitration agreements. ECF No. 20 at 7. The plaintiffs also argue that a valid arbitration agreement does not exist because the agreement is unconscionable. *Id.* at 10–23. I address each argument in turn.

#### 1. *There is not a genuine issue of material fact as to whether the plaintiffs signed the agreements.*

When analyzing a motion to compel arbitration, I employ a similar standard to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure. *Gonzalez v. Comenity Bank*, 2019 U.S. Dist. LEXIS 188514, at *4 (E.D. Cal. Oct. 30, 2019). Therefore, the moving party must show there is no genuine issue of material fact and it is entitled to an order compelling arbitration as a matter of law. If I find a genuine issue of material fact exists, I must summarily proceed to a bench trial on the issue. 9 U.S.C. § 4; *see also Mayorga v. Ronaldo*, 491 F. Supp. 3d 840, 855, 860 (D. Nev. 2020).

To support their motion to compel, as explained above, defendants provide copies of Mullin's and Thompson's signed arbitration agreements. ECF No. 10-1; ECF No. 10-2.[2] In response, Mullin and Thompson argue that, despite the existence of the signed agreements, they did not in fact sign any arbitration agreement. To support their argument, they state that the agreements are dated before either plaintiff started work, the signatures are not theirs, and that

---

[2] I may examine evidence outside the pleadings on a motion to compel arbitration. *Whipple v. Whipple*, 2025 U.S. Dist. LEXIS 59265, at *6 (D. Nev. Mar. 29, 2025) (citing *Manuwal v. BMW of N. Am., LLC*, 484 F. Supp. 3d 862, 864 n.1 (C.D. Cal. 2020)).

5

there were "ample other opportunities for other employees to 'sign' on their behalf'" because plaintiffs' passwords were in an inbox "viewable by any store employee." ECF No. 20 at 7. Mullin and Thompson provide declarations attesting to these facts, and also provide the court with examples of their signatures to demonstrate that the signatures on the agreements are not theirs. *See* Mullin decl., ECF No. 20-1; Mullin handwriting examples, Pls.' Ex., B, C, ECF No. 20-1 at 10–12; Thompson decl., ECF No. 20-2; Thompson handwriting examples, Pls.' Ex. B, C, ECF No. 20-2 at 9–11.

In reply, defendants insist that they have conclusively established that the plaintiffs signed the arbitration agreements. ECF No. 29 at 3. They explain that prior to starting work, plaintiffs were required to log in to a system called StarSource to complete certain critical onboarding tasks prior to their first day of work. *Id.* at 4. StarSource credentials are tied to the plaintiffs' personal email addresses, and StarSource can confirm that not only did the plaintiffs complete required onboarding tasks, but they both signed the arbitration agreement. *Id.*; *see generally* Kobey decl., Defs.' Ex. C, ECF No. 10-3; Kobey suppl. decl. (reply), ECF No. 29-2. Additionally, the defendants provide screenshots of Mullin's and Thompson's certificates of completion they received for signing the arbitration agreement. Cert. of completion, Defs.' Ex, A, ECF No. 29-3 at 10; Cert. of completion, Defs.' Ex. B, ECF No. 29-4 at 6.

Plaintiffs have not met their burden in demonstrating that a genuine issue of material fact exists as to whether they did in fact sign their respective arbitration agreements. Mullin and Thompson contend that they did not sign the arbitration agreement (ECF No. 20-1 at ¶ 5; ECF No. 20-2 at ¶ 6), but these assertions are supported solely by their respective declarations. "[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Valenzuela v. GK Nev. LLC*, 2024 U.S. Dist. LEXIS 127071, at *14–15 (D. Nev. June 26, 2024) (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Although, Mullin and Thompson provide other examples of their handwriting to demonstrate that their signatures are different from what is affixed to the

6

arbitration agreement, this does not move the needle. Mullin provided two additional examples of her signature, the one on her license and one from a signed check. A review of the signatures indicates that, although it is true that there are slight differences between the signatures Mullin provided and the one on the arbitration agreement, the differences are not so stark as to suggest forgery. All three signatures include a number of similarities making it even more likely that Mullin signed all three documents. The same is true for Thompson; he also provided two additional examples of his signature, and although each signature contains slight differences, they also contain a number of significant similarities. There are not enough differences in each persons' respective signature to create a genuine issue of material fact that the signatures were forged. Further, defendants' declarations that all individuals hired by CVS or a subsidiary use StarSource to electronically review and sign onboarding documents, which includes the arbitration agreement, and evidence in the form of screenshots of the completed arbitration agreements for both Mullin and Thompson, belie the plaintiffs' claims. *See* ECF No. 10-1 at ¶ 3; ECF No. 29-3 at 10; ECF No. 29-4 at 6. Simply proclaiming that they did not sign their agreements is not enough to create a genuine issue of material fact. *See FTC*, 104 F.3d at 1171 (citations omitted); *see Valenzuela*, 2024 U.S. Dist. LEXIS 127071, at *15 (collecting cases).

   Additionally, to support the broad assertion that the signatures are not theirs, the plaintiffs state that "[t]here were ample opportunities for other employees to 'sign' on their behalf[,]" and that "[p]laintiffs' passwords were in an inbox viewable to any store employee." ECF No. 20 at 7. But this is no more than vague speculation. In her declaration, Mullin states that she did all of her onboarding at a computer at the CVS at which she worked, that the onboarding tasks were rushed, and that "[i]t was common practice at each CVS at which I worked to share individual log-in information so that one person could 'complete' training models on behalf of other workers while the other workers were on the floor." ECF No. 20-1 at ¶¶ 6, 10, 24. Thus, she concludes, she "cannot exclude the possibility that this agreement was signed by someone else with my login credentials which I did not create myself." *Id.* at ¶ 25.

Thompson also states that he did not sign any documents prior to his first day at CVS, and that he did all of his training at the computer at the CVS at which he worked. ECF No. 20-2 at ¶¶ 5, 8. But the plaintiffs do not provide any evidence corroborating these statements, and these statements are directly contradicted by the defendants' evidence indicating that Mullin and Thompson completed various documents and provided large amounts of personal information to CVS via StarSource *prior to starting*. *See* ECF No. 29-2 at 2–14; ECF No. 29-3 at 2–6; 29-4 at 2–6. For these reasons, I find that the plaintiffs failed to meet their burden to demonstrate that there is a genuine issue of material fact as to whether they each signed the arbitration agreement.

### 2. *The agreement is not unconscionable.*

Mullin and Thompson also allege that the arbitration agreement is invalid because it is unconscionable under Nevada law. ECF No. 20 at 8–19. "Under Nevada law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable." *De Niro v. Arise Virtual Sols. Inc.*, 2024 U.S. Dist. LEXIS 210885, at *11 (D. Nev. Nov. 20, 2024) (citing *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023)). An arbitration agreement is procedurally unconscionable if "a party lacks a meaningful opportunity to agree to the . . . terms either because of unequal bargaining power, as in an adhesion contraction, or because . . . its effects are not readily ascertainable upon review of the contract." *Tough Turtle Turf*, 537 P.3d at 885. An arbitration agreement is substantively unconscionable if its "terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." *Id.* "Unconscionability is evaluated on a 'sliding scale,' such that 'if one type of unconscionability is greater, the other may be lesser.'" *De Niro*, 2024 U.S. Dist. LEXIS 210885, at *12 (citing *id.* at 885). Although the party seeking to enforce an arbitration agreement bears the burden of proving the validity of the agreement, the party opposing arbitration must establish a defense to enforcement—in this case that it is unconscionable. *Id.*

1    As a threshold, the defendants argue that the arbitration agreement specifically states
2 that the signers agree to arbitrate the validity of the contract—which includes whether it is
3 unconscionable. ECF No. 29 at 6. A review of the arbitration agreement at issue demonstrates
4 that this is correct. *See* ECF No. 10-1 at 2 ("Covered Claims also include disputes arising out of or
5 relating to the validity[.]") The Supreme Court, in *Rent-A-Center, W., Inc. v. Jackson*, reaffirmed that
6 parties can agree to arbitrate "gateway questions of arbitrability" to include whether the
7 arbitration agreement is valid. 561 U.S. 63, 68–69 (2010). Therefore, where an arbitration
8 agreement's delegation clause provides for an arbitrator to have authority to determine whether
9 an arbitration agreement is valid, a court is barred from adjudicating a party's claim of
10 unconscionability. *See Madrigal v. AT&T Wireless Servs.*, 2010 U.S. Dist. LEXIS 134347, at *6–7 (E.D.
11 Cal. Dec. 20, 2010) (citing *Jackson*, 561 U.S. at 72). The only exception to this rule is that a court
12 may rule on the unconscionability of the delegation clause itself. *Jackson*, 567 U.S. at 72
13 ("[U]nless Jackson challenged the delegation provision specifically, it must be treated as valid
14 under § 2, and enforced under §§ 3 and 4."). Mullin and Thompson put forth a number of
15 arguments demonstrating that the arbitration agreement is both procedurally and substantively
16 unconscionable. *See generally* ECF No. 20. However, given that the arbitration agreement
17 delegates disputes arising out of the validity of the agreement, I only address the arguments
18 relating to whether the delegation clause is unconscionable. And because the arbitration
19 agreement prescribes different rules for this section and explicitly requires any arguments
20 relating to the validity of the "Class Action Waiver" section to be heard by "a civil court of
21 competent jurisdiction," ECF No. 10-1 at 3, I also address the plaintiffs' arguments relating to the
22 Class Action Waiver.[3]

---

26 [3] Plaintiffs argue that the "Class Action Waiver" section of the agreement is unconscionable. ECF No. 20 at 14.

### a. *Procedural unconscionability of the delegation clause*

Mullin and Thompson first argue that the delegation clause coupled with governing law is procedurally unconscionable. ECF No. 20 at 13. First, it is unclear from the brief what the plaintiffs mean when they cite "governing law." If they mean to reference the "governing law" section from the arbitration agreement, it is entirely unclear how that section, which states "This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce[,]" when combined with the clause delegating questions of validity to the arbitrator, could equate to procedural unconscionability. If the plaintiffs use "governing law" to mean Ninth Circuit precedent, their claim fares no better.

Plaintiffs contend *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024), supports their argument. ECF No. 20 at 13. In that case, the court held that an arbitration agreement was procedurally unconscionable when it involved an ambiguous cost-splitting provision and a choice-of-law provision that made it difficult for a person to understand how the agreement applied. *Ronderos*, 114 F.4th at 1092. While plaintiffs cite to this case as evidence that the delegation clause applicable here is procedurally unconscionable, they fail to conduct any meaningful analysis explaining its relevance—particularly when this case analyzes the delegation provision under California law, not Nevada law. Indeed, the arbitration agreement at issue here does not include a choice-of-law provision, nor does it include any ambiguous cost-splitting provision. In fact, the cost and fees section of the arbitration agreement at issue is straightforward and indicates that CVS will pay all costs and expenses that are charged by the American Arbitration Association (AAA) or arbitrator. It says:

> CVS will pay all costs and expenses charged by the AAA or the arbitrator, including but not limited to the arbitrator's fees, except that, for claims You initiate, You will be responsible to pay the claim initiation fee charged under the AAA Rules; however, if Your claim initiation fee exceeds what a court in the jurisdiction would have charged You for filing a lawsuit based on Your claims, then You will be responsible only for the amount that the court would have charged, and CVS will pay the remaining amount to the AAA. Each party will pay its own

litigation costs and attorneys' fees, if any. However, if any party prevails on a claim which affords the prevailing party attorneys' fees and litigation costs, the arbitrator is authorized to award attorneys' fees and/or litigation costs under the same standards a court would apply under applicable law.

ECF No. 10-1 at 2.

Therefore, there is nothing currently before the court allowing me to find that the delegation provision of the arbitration agreement is procedurally unconscionable.

### b. *Substantive unconscionability of the delegation clause*

Because the plaintiffs' procedural unconscionability argument fails, the court could stop its analysis. Nonetheless, I address the plaintiffs' next argument, that is, that "the delegation clause when coupled with confidentiality is substantively unconscionable." ECF No. 20 at 13. They argue that a delegation clause coupled with a confidentiality provision renders an arbitration agreement unenforceable. ECF No. 20 at 13–14. Plaintiffs are correct that the "Ninth Circuit has repeatedly held that confidentiality provisions render arbitration agreements unconscionable." *Osterhaus Pharm. Inc. v. CVS Health Corp.*, 2024 U.S. Dist. LEXIS 206717, at *29 (D. Ariz. Nov. 13, 2024). However, the arbitration agreement at the subject of this dispute **does not contain a confidentiality provision.** Plaintiffs merely claim, without **any** support, that "CVS employees are under confidentiality agreements, and CVS may well extend those agreements to arbitration, and certainly extend them to settlement." ECF No. 20 at 14. This is pure speculation and irrelevant, and even if this were true, the Ninth Circuit has held that confidentiality provisions *in* arbitration agreements are unconscionable; claiming that CVS employees are under confidentiality agreements is not the same as having an arbitration agreement that includes a confidentiality provision. Plaintiffs also state that, "The AAA does not publish arbitration opinions, about delegation clauses or otherwise." *Id.* This is blatantly false. A review of the AAA rules[4] shows that the only person obligated to maintain confidentiality is the arbitrator: "Unless

---

[4] I take judicial notice of the rules of the AAA as they can be readily determined from a source whose accuracy cannot reasonably be disputed. *See Torres v. Secure Commun. Sys.*, 2020 U.S. Dist. LEXIS 204104, at

otherwise required by applicable law, court order, or the parties' agreement, the AAA and the arbitrator shall keep confidential all matters relating to the arbitration or the award." AAA Rules, R-42(a) (Confidentiality). Further, the rules also state that "[t]he AAA may choose to publish an award rendered under these Rules." *Id.* at 42(c). Further, under the "Form of Award" section, it states that "any award shall be in writing and signed by a majority of the arbitrators" and "**the award shall provide the written reasons for the decision unless the parties all agree otherwise.**" *Id.* at R-45(a), (b) (emphasis added). Because there is no confidentiality provision in the arbitration agreement, the delegation provision in the arbitration agreement is not substantively unconscionable.

Because the delegation provision is neither procedurally nor substantively unconscionable, my inquiry into the validity of the agreement ends. Any other arguments relating to validity of the arbitration agreement must be heard by the arbitrator.

### c. The Class Action Waiver

Plaintiffs argue that the class action waiver is also unconscionable. ECF No. 20 at 14–16. Although plaintiffs are required to demonstrate both procedural and substantive unconscionability to succeed on their claim, they focus largely on the substantive unconscionability and merely reference procedural unconscionability when they say that "[t]he Nevada Supreme Court allowed a class action of employees to proceed because the agreement they signed when considered with its class action waiver was procedurally and substantively unconscionable." *Id.* at 14 (citing *FQ Men's Club, Inc. v. Doe Dancers*, 2018 Nev. LEXIS 250 at *3–4 (D. Nev. Dec. 21, 2018)). Although this lack of argument relating to procedural unconscionability could be lethal to the plaintiffs' claim, for purpose of judicial efficiency I nevertheless analyze the class action waiver for both procedural and substantive unconscionability.

---

*3 (C.D. Cal. July 25, 2020). They can be found here: https://www.adr.org/sites/default/files/2025_Employment_Arbitration_Rules.pdf.

As stated above, procedural unconscionability exists when "a party lacks a meaningful opportunity to agree to the . . . terms either because of unequal bargaining power, as in an adhesion contraction, or because . . . its effects are not readily ascertainable upon review of the contract." *Tough Turtle Turf*, 537 P.3d at 885. To determine whether an agreement is procedurally unconscionable, courts in Nevada consider (1) whether the contract is oppressive; and (2) whether the contract contains surprise. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (interpreting Nevada law).

A contract is considered oppressive if there is "no meaningful opportunity to opt out." *Id.* Here, the arbitration agreement, which includes the class action waiver, contains an express provision that allows a signatory to opt out. *See* ECF No. 10-1 at 3 ("Arbitration is not a mandatory condition of Your employment at CVS. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms."). Indeed, the agreement gives the employee thirty days to opt out of the agreement. *Id.* Therefore, this arbitration agreement is not oppressive. *See Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (finding no procedural unconscionability when employee was given thirty days to opt out of the program).

A contract contains surprise when the "important terms [are] hidden in a maze of fine print and minimized by deceptive practices." *Kidneigh v. Tournament One Corp.*, 2013 U.S. Dist. LEXIS 72696, at *4 (D. Nev. May 21, 2013). A review of the agreement shows that the terms of the class action waiver are clearly printed, and the clause title is bolded and underlined. *See* ECF No. 10-1 at 3. Additionally, the arbitration agreement explicitly states that, should the signer wish, they can seek legal counsel to review the agreement and ask questions. *See id.* ("By signing below, You acknowledge that You have carefully read this Agreement, that you understand and agree to its terms, that You have had the chance to ask questions about the Agreement, and that you have had or will have the chance to consult with your own legal counsel before the end of the opt out period described above.") Therefore, I do not find that the arbitration agreement

contained any surprise. Because I do not find that the contract was oppressive or contained surprise, I do not find any procedural unconscionability.

Turning now to substantive unconscionability, Mullin and Thompson argue that the class action waiver is substantively unconscionable because it "stand[s] in the way of worker rights under federal labor law." ECF No. 20 at 15 (citing *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016)). They also argue that the class action waiver is substantively unconscionable because it attempts to force the employees to the "inferior forum" of arbitration. *Id.* at 16 (citing *Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp. 2d 1018, 1029–30 (N.D. Cal. 2009). According to the plaintiffs, because CVS pays the arbitrators and CVS is a "repeat player[,]" arbitration represents an "inferior forum" for its employees. *Id.*

In response, the defendants argue that class action waivers are not only not unconscionable but also considered default provisions in arbitration agreements absent express language to the contrary. ECF No. 29 at 9 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348, (2011)). They further contend that the plaintiffs (1) misunderstand the case law they cited and (2) cite to case law that references California law, which is irrelevant because this provision must be analyzed under Nevada law. *Id.* at 10.

I find that the class action waiver is not substantively unconscionable. The Supreme Court has made clear that clauses barring class-wide arbitration are perfectly acceptable. First, in *Concepcion*, the Supreme Court explained that allowing class wide arbitration is inconsistent with the FAA because it would "fundamental[ly] change" the traditionally individualized and informal nature of arbitration which would "sacrific[e] the principal advantage of arbitration— its informality—and mak[e] the process slower, more costly, and more likely to generate procedural morass than final judgment." 563 U.S. at 348.

Additionally, in *Epic Systems Corp. v. Lewis* the Court reaffirmed that courts must "rigorously" "enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that

arbitration will be conducted" and upheld an arbitration agreement that included a class action waiver. 584 U.S. 497, 506 (2018) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)) (emphasis added in *Epic Systems Corp.*).[5] Given that the Supreme Court has expressly allowed class action waivers in arbitration agreements, the inclusion of this waiver in the arbitration agreement at issue does not contravene public interest or public policy. *See Tough Turtle Turf*, 537 P.3d at 885. Additionally, there are no facts before the court that suggest that the class action waiver's terms are "unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process[.]" *See id.* Plaintiffs' citation to *Jackson* is not persuasive. In *Jackson*, the court held that arbitration was an inferior forum where the arbitration agreement significantly shortened the statute of limitations for bringing the claims and did not expressly state that the employers would pay for any arbitration costs. 629 F. Supp. 2d. at 1031. These facts are not present here. Therefore, the class action waiver is not substantively unconscionable. Consequently, the plaintiffs have failed to demonstrate that the class action waiver is either procedurally and substantively unconscionable.

Because the plaintiffs have failed to demonstrate that they did not sign the arbitration agreement or that the delegation clause and the class action waiver are unconscionable, I find that this dispute is arbitrable. Defendants' motion to compel arbitration is granted. Because the defendants request the imposition of a stay pending disposition of the arbitration, *see* ECF No. 10 and 13, I am required to stay the action. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).[6] Therefore, this case is now stayed pending disposition of arbitration.

---

[5] Plaintiffs' citation to *Totten* is therefore irrelevant as it was decided prior to the Supreme Court's decision in *Epic System Corp.*

[6] Defendants requested that I compel the plaintiff's individual claims to arbitration and stay their claims pending disposition at arbitration, or "alternatively, dismiss their Complaint for failure to state a claim." ECF No. 10 at 13. However, asking for two forms of relief in one motion violates this district's local rules. *See* LR IC 2-2(b). Therefore, I do not address the motion to dismiss request.

III.     Conclusion

IT IS THEREFORE ORDERED that defendants' motion to compel arbitration **[ECF No. 10] is GRANTED.** The parties must promptly submit this matter to arbitration in accordance with the CVS Health Arbitration Agreement (ECF No. 10-1; ECF No. 10-2).

IT IS FURTHER ORDERED that defendants' motion to stay the case pending resolution of the motion to compel arbitration **[ECF No. 11] is DENIED as moot.**

This matter is now STAYED pending the outcome of arbitration. The parties must file a joint status report within fourteen days of the arbitrator's decision. If the arbitration is not complete by November 21, 2025, the parties must file a joint status report addressing the arbitration proceeding.

Dated: June 20, 2025

_____
Cristina D. Silva
United States District Judge